**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephanie Marie Kellogg, | No. CV-19-00210-TUC-EJM |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Stephanie Marie Kellogg brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security ("Commissioner"). Plaintiff raises four issues on appeal: 1) the Administrative Law Judge ("ALJ") erred by failing to provide specific and legitimate reasons to discount Dr. Medlen's treating physician opinion; 2) the ALJ failed to provide specific and legitimate reasons to discount Dr. Petralba's treating physician opinion; 3) the ALJ failed to provide clear and convincing reasons to discount Plaintiff's subjective symptom testimony; and 4) whether substantial evidence supports the Commissioner's finding that three jobs were appropriate and available under Plaintiff's residual functional capacity ("RFC"). (Doc. 19).

Before the Court are Plaintiff's Opening Brief, Defendant's Response, and Plaintiff's Reply. (Docs. 19, 20, & 23). The United States Magistrate Judge has received the written consent of both parties and presides over this case pursuant to 28 U.S.C. § 636(c) and Rule 73, Federal Rules of Civil Procedure. For the reasons stated below, the Court finds that this matter should be remanded for further administrative proceedings.

## I.   Procedural History

Plaintiff filed an application for Supplemental Security Income on June 15, 2015. (Administrative Record ("AR") 309).[1,2] Plaintiff alleged disability beginning on November 20, 2014 based on arthritis (right ankle and wrist), torn knee cartilage, asthma, high blood pressure, and torn meniscus (surgeries and reconstruction). (AR 189). Plaintiff's application was denied upon initial review (AR 188) and on reconsideration (AR 200). A hearing was held on October 2, 2017 (AR 147), after which ALJ Yasmin Elias found, at Step Four, that Plaintiff was not disabled because she was capable of returning to her past relevant work as a companion as actually performed. (AR 29). The ALJ also made an alternate finding at Step Five that Plaintiff could perform other work existing in significant numbers in the national economy. (AR 29–31). On February 11, 2019 the Appeals Council denied Plaintiff's request to review the ALJ's decision. (AR 1).[3]

Plaintiff's date last insured ("DLI") for DIB purposes is December 31, 2021. (AR 17). Thus, to be eligible for benefits, Plaintiff must prove that she was disabled during the time period of her AOD of November 20, 2014 and her DLI of December 31, 2021.

## II.   Factual History[4]

Plaintiff was born on September 27, 1986, making her 28 years old at the AOD of her disability. (AR 189). She has an 11th grade education and past work as a companion, a cashier and fast food cook at the swap meet, and was self-employed as a housekeeper and

---

[1] Plaintiff filed prior applications on January 12, 2010 and March 25, 2008, which were denied at the initial level of review. (AR 190).

[2] Plaintiff filed her initial application for SSI pursuant to Title XVI of the Act. At the hearing, Plaintiff's counsel and the ALJ discussed that Plaintiff's work as a companion after her AOD gave her insured status, and the ALJ advised that Plaintiff should also file an application for DIB under Title II. The ALJ considered both of Plaintiff's applications in her decision. (AR 17). The ALJ noted that Plaintiff could not have received benefits under Title II until April 2016, but that it was not necessary to resolve the proper date for payment of benefits or supplemental income because Plaintiff was not disabled. (AR 20).

[3] Plaintiff submitted additional evidence to the Appeals Council. (AR 37–146). The Appeals Council noted that any evidence dated after the ALJ's decision on January 8, 2018 did not relate to the period at issue and did not affect the decision as to whether Plaintiff was disabled on or before January 8, 2018. (AR 2). As to the evidence dated before January 8, 2018, the Appeals Counsel found that it did not show a reasonable probability that it would change the outcome of the decision. *Id.*

[4] While the undersigned has reviewed the entirety of the record in this matter, the following summary includes only the information most pertinent to Plaintiff's claims on appeal.

babysitter. (AR 158, 333).

A.   Dr. Medlen

On October 3, 2007 Plaintiff saw Dr. Medlen for left knee arthroscopy. (AR 952). The post-operative diagnoses were severe, nonseptic hemorrhagic synovitis, and torn portions of medial and lateral meniscus with severe chondromalacia.

On April 9, 2014 Dr. Medlen performed left knee arthroscopy. (AR 1066). The post-operative diagnoses were moderate chondromalacia with severe subluxation of patella secondary to tight lateral bands, mild nonseptic synovitis, and degenerative tearing of the small medial and lateral menisci.

On June 24, 2014 Plaintiff was seen for follow-up of her left knee following surgery. (AR 455). She reported medial pain radiating to the leg, constant and sharp, and Dr. Medlen noted her complaints were as expected at this time. Examination of the left knee showed antalgic gait, moderate swelling, crepitus, and effusion, severe tenderness to palpation, no evidence of instability, normal tracking, alignment, and mobility, quadriceps weakness, and normal sensation. (AR 456). Examination of the right knee was normal. Plaintiff received an injection in her knee. (AR 457).

On August 12, 2014 Plaintiff was seen for increased right knee pain and 4-month follow-up of left knee surgery. (AR 450). She reported constant diffuse pain and swelling of the right knee, radiating to the shin, and aggravated by walking, weight-bearing, and increased activity. Examination of the left knee was normal, and examination of the right knee showed severe antalgic gait, moderate swelling, crepitus, and effusion, severe tenderness to palpation, restricted range of motion with pain, and normal motor function and sensation. (AR 451–452). Dr. Medlen recommended surgery on the right knee. (AR 452).

On September 17, 2014 Plaintiff had surgery for internal derangement of the right knee. The post-operative diagnoses were status post right lateral patellar dislocation with chondral defect of medial patellar facet, and cartilaginous defect medial femoral condyle with torn medial meniscus anterior horn and chronic synovitis effusion, severe lateral

tracking patella with intra-articular adhesions. (AR 447).

On October 2, 2014 Plaintiff was seen for a follow-up after right knee surgery and was doing better and not hurting. (AR 444). Examination of the left knee was normal, and examination of the right knee showed no evidence of effusion and no area of focal tenderness, full range of motion, no instability, normal motor and muscle function, and normal sensation. (AR 445). Plaintiff was referred for physical therapy and a home exercise program.

On December 9, 2014 Plaintiff was seen for a follow-up of the right knee. (AR 442). Examination of the left knee was normal, and examination of the right knee showed normal gait, no evidence of effusion and no area of focal tenderness, full range of motion, no instability, normal tracking, alignment, and mobility, quadriceps weakness, and normal sensation. (AR 443).

On February 12, 2015 Plaintiff was seen for a 5-month follow-up after right knee surgery. (AR 439). Plaintiff reported constant diffuse pain and swelling, and Dr. Medlen noted her complaints were as expected at this time. Examination of the left knee was normal. (AR 440). The right knee had antalgic gait, moderate swelling, crepitus, and effusion, severe tenderness to palpation, restricted range of motion with pain, and quadriceps weakness. Dr. Medlen assessed degenerative joint disease and chondromalacia patella, and gave Plaintiff an injection. (AR 441).

On July 13, 2015 Dr. Medlen assessed bilateral osteoarthritis of the knees and noted that Plaintiff had scopes with temporary relief and her symptoms were progressive and severe. (AR 145). He documented tenderness, crepitance, and decreased range of motion, and Plaintiff received injections. Dr. Medlen opined that bariatric surgery was imperative because a dramatic weight reduction would alleviate Plaintiff's knee symptoms, and did not recommend further orthopedic surgery.

On October 30, 2015 Plaintiff was seen for left knee pain after a fall and reported decreased range of motion and stiffness. (AR 775). Examination of the left knee showed swelling, severe tenderness to palpation, no instability, and normal motor function and

sensation; Plaintiff received an injection. (AR 776–777).

On June 16, 2016 Plaintiff was seen for left knee pain and swelling, radiating to the shin, significantly aggravated by walking and weight-bearing, and slowly getting worse. (AR 772). Examination of the right knee was normal, and the left knee showed antalgic gait, moderate swelling, crepitus, and effusion, severe tenderness to palpation, no instability, normal motor and muscle function, and normal sensation. (AR 773). Dr. Medlen assessed inflammatory polyarthropathy, recommended home exercises, and gave Plaintiff an injection. (AR 773–774).

On October 18, 2016 Plaintiff was seen for chronic right wrist pain and bilateral knee pain. (AR 49). Her knee pain was sharp and constant, getting worse, and wrist pain was intermittent and sharp, piercing, stabbing, numb, and tingling, getting worse. Findings on exam were: left knee antalgic gait, moderate swelling, crepitus, and effusion, severe tenderness to palpation, and normal motor and muscle function; right knee antalgic gait, swelling, crepitus, and effusion, severe tenderness to palpation, restricted range of motion, and normal motor and muscle function; left wrist normal; right wrist swelling, tenderness to palpation, decreased range of motion, positive Tinel's sign and Phalen sign, and decreased strength. (AR 50–51). Dr. Medlen assessed carpal tunnel syndrome, right, and bilateral primary osteoarthritis of knee, ordered an EMG/NCV for the bilateral upper extremities, and gave Plaintiff knee injections. (AR 51).

On December 29, 2016 Plaintiff was seen for left knee pain radiating down the lateral thigh, made worse with any activity, alleviated by nothing, and markedly worse. (AR 765). Examination of the right hip was normal and examination of the left showed antalgic gait, severe tenderness over the greater trochanter, good and painless range of motion, and normal strength, stability, alignment, mobility, sensation, and reflexes. (AR 766). Dr. Medlen assessed trochanteric bursitis in the left hip and gave Plaintiff an injection. (AR 767).

A January 24, 2017 nerve conduction study of both upper extremities showed mild right carpal tunnel syndrome and was otherwise normal. (AR 761).

On February 24, 2017 Plaintiff was seen for bilateral hand and wrist pain, right worse than left. (AR 45). Plaintiff reported her pain was constant, she had decreased strength and range of motion, and her pain was significantly aggravated by increased activity. Examination of the left wrist was normal, and the right wrist had swelling, severe tenderness to palpation, decreased and painful range of motion, decreased strength, and positive Tinel's sign and Phalen sign. (AR 46). Dr. Medlen assessed carpal tunnel syndrome, right, and other synovitis and tenosynovitis, right, and recommended carpal tunnel release surgery. (AR 47).

On March 21, 2017 Dr. Medlen performed right carpal tunnel release surgery. (AR 755). The post-operative diagnosis was severe chronic right carpal tunnel syndrome, symptomatic with chronic tenosynovitis.

On March 31, 2017 Plaintiff was seen for a follow-up after surgery and was overall improving. (AR 751). She reported localized numbness and tingling in the upper extremities, right worse than left. (AR 752). Examination of the left wrist was normal, and the right wrist showed no swelling or tenderness, decreased range of motion as expected post-op and painless, no instability, negative Tinel's sign, and normal strength, tone, and sensation. Dr. Medlen recommended pain medication and Tylenol as needed, wrist brace, and begin range of motion exercises. (AR 753).

On April 28, 2017 Plaintiff was seen for a follow-up and was slowly getting better. (AR 748). She reported localized numbness and tingling in the upper extremities, right worse than left. (AR 749). Examination of the left wrist was normal, and the right wrist showed no tenderness, full and nonpainful range of motion, no instability, normal sensation, and decreased strength. Dr. Medlen assessed carpal tunnel, improving, and recommended NSAIDs, wrist splint, and continue PT and home exercise program.

On September 25, 2017 Dr. Medlen completed a Medical Work Tolerance Recommendations form. (AR 1129). He opined that Plaintiff could not do even sedentary work full- or part-time; could stand for 10 minutes at a time and sit for 20 minutes (but did not indicate for how many total hours); could walk for 10 minutes for no more than 20

minutes total; would have to change positions frequently; could not use her feet for foot controls; could never climb ladders or stairs; could not drive; could ride in a vehicle for 10 minutes at a time and 20 minutes total; and would miss an average of 8–10 days a month as a result of disability and normal illness. Dr. Medlen further opined that Plaintiff could not bend, crouch, kneel, squat, sit in a clerical position, reach above shoulder level, work with her arms extended in front, power grip, push, or pull, pinch with her thumb and index finger, perform fine movements such as typing or small assembly, or feel/touch where sensation was required. (AR 1130). He indicated that these limitations were in effect since April 2014 and were ongoing.

On April 27, 2018 Plaintiff was seen for right wrist pain and reported her pain was constant and sharp, and she had numbness and tingling in the upper extremities, right more than left. (AR 42–43). Examination of the left wrist was normal, and the right wrist had swelling, tenderness to palpation, decreased and painful range of motion, positive Finkelstein test, and normal strength and sensation. (AR 43–44). Dr. Medlen assessed other synovitis and tenosynovitis, right hand, prescribed thumb splints and NSAIDs, and gave Plaintiff a cortisone injection. (AR 44).

B.    Dr. Petralba[5]

On February 7, 2017 Plaintiff saw Dr. Petralba for diabetes, musculoskeletal pain, and obesity. (AR 883). Plaintiff had diabetes since 2010, getting worse, and pain in her bilateral knees, aggravated by climbing stairs, lifting, movement, and standing, and associated with decreased mobility, limping, locking, and spasms. The physical exam was normal, other than a note that Plaintiff was "chronically ill-appearing." (AR 886). Dr. Petralba assessed degenerative tear of the left medial meniscus, denied Plaintiff's request for a refill of Vicodin and told Plaintiff that she needed to be managed by the pain clinic, noted Plaintiff had a history of positive drug urine screens, and recommended bypass surgery. (AR 887).

On May 19, 2017 Plaintiff saw Dr. Petralba for diabetes, hypertension, and

---

[5] Dr. Petralba is one of several providers that Plaintiff has seen at El Rio Community Health Center. The record includes documentation of appointments at El Rio from 2015–2017.

1   hyperlipidemia. (AR 871). Plaintiff reported that her glucose meter stopped working and
2   requested a prescription for a new machine. Plaintiff also reported frequent urination, and
3   the exam was normal other than Plaintiff's noted obesity. (AR 873–874). Plaintiff was
4   referred to the Diet of Hope and her insulin was increased. (AR 875).

5      On September 26, 2017 Dr. Petralba completed a Medical Work Tolerance
6   Recommendations form. (AR 1132). She opined that Plaintiff could do full-time sedentary
7   work with the following restrictions: stand for 20 minutes at one time and for 8 total hours;
8   sit for 30 minutes and for 8 total hours; walk for 30 minutes and for 45 total minutes;
9   needed to change positions frequently; could use her feet for frequent movements; could
10  climb ladders and stairs; could drive and ride in a vehicle for 30 minutes and for 8 total
11  hours; and would miss an average of 1 day of work per month due to disability and other
12  illnesses. Dr. Petralba further opined that Plaintiff could occasionally[6] bend, crouch, kneel,
13  squat, sit in a clerical position, reach above shoulder level, and work with her arms
14  extended out front. (AR 1133). Dr. Petralba indicated that Plaintiff's use of her hands or
15  arms was not restricted, but then opined that Plaintiff could occasionally power grip, push,
16  and pull, pinch with thumb and index finger, perform fine movements such as typing and
17  small assembly, and feel/touch where sensation was required. Dr. Petralba also assessed
18  environmental limitations and opined that Plaintiff could work 8 hours a day, 4 days a
19  week, with the recommended limitations. Dr. Petralba did not indicate what time period
20  the limitations applied to.

21      C.   State Agency Physicians

22      At the initial disability determination level, Dr. Charles Fina opined that Plaintiff
23  could do sedentary work with the following limitations: occasionally lift/carry 20 pounds,
24  frequently lift/carry 10 pounds, stand/walk 4 hours, sit 6 hours, occasionally climb
25  ramps/stairs, balance, stoop, crouch, and crawl, and never climb ladders or kneel due to
26  extreme obesity and degenerative changes in the knees. (AR 195–196). He also
27  recommended that Plaintiff avoid concentrated exposure to extreme heat and cold, wetness,

28
────────────────
[6] Defined as 1–3 times per hour or less than 10 minutes per hour

humidity, and vibration, and avoid all exposure to hazards. (AR 196–197).

On reconsideration, Dr. Martha Goodrich assessed the same limitations. (AR 211–212).

D.     Plaintiff's Testimony

On an Exertional Daily Activities Questionnaire dated July 10, 2015, Plaintiff reported that she could not do much with her knee injury and could not stand or walk for long periods of time. (AR 347). Walking from the house to the car, about 60 feet, is hard for her. She lives with family who help her a lot, and when she can she cleans and cooks. The pain in her knees is always there and at times she gets severe swelling and can't bend her knee or put pants on. She does not drive and does not go out much because of pain, anxiety, and depression. (AR 348). Plaintiff stated that she uses a brace while walking and a cane to help balance. (AR 349).

On a Function Report dated January 1, 2016, Plaintiff reported that she cannot work because she can't walk or stand for long periods of time, she has migraines lasting 3–7 days, pain in her wrist made it hard to hold onto or grab anything, and pain in her knees makes it hard to get out of bed. (AR 360). Most days it is hard for her to get up due to pain, but she tries to clean the house and do laundry, and gets help from her family. (AR 361). Plaintiff has a son and her sister and father help her care for him. Plaintiff stated she is in constant pain and medication helps take the edge away so that she can sleep. Plaintiff has no problems with personal care and cooks for herself a few times a week but can't stand long because of pain in her knees and wrist. (AR 362). She does not do much because of pain, but visits with family, goes to the movies, and shops for groceries a few times a month. (AR 364). Plaintiff reported that her conditions affect her ability to lift, squat, bend, stand, walk, kneel, see, and use her hands, but that she has no problems paying attention or following instructions. (AR 365). Due to the stress of not being able to do much, she has anxiety attacks and gets very emotional. (AR 366). Plaintiff uses a prescribed walker, knee brace, and wrist split.

At the hearing before the ALJ, Plaintiff testified that she finished the eleventh grade

and was in special classes because of dyslexia and trouble with English. (AR 159). She was last employed in 2015–2016 as a companion for an elderly woman; her duties included warming pre-made meals, medication reminders, and "babysitting"—sitting with the woman and hanging out. (AR 159–163). Before that Plaintiff babysat two children at her home, and prior to that she worked at the swap meet making fast food. (AR 159–160).

Plaintiff lives with her aunt and her cousin and they help her with laundry, cleaning, cooking, and groceries. (AR 164).

Plaintiff stated that she had had diabetes for 10 or 11 years and it was not under control at all. (AR 164). She has high blood sugars and when she has a high spike she gets dizzy, confused, dry mouth, sleepiness, vomiting, and diarrhea, and sometimes passes out. (AR 165). These bad periods occur 2–3 times a month and can last up to a week. She also has recurrent yeast infections and frequent urination, and has had some accidents but is using incontinence products. (AR 174–175).

Plaintiff stated that Dr. Petralba was her primary care physician and that she had seen her 4–5 times over the past 6–7 months. (AR 158). Dr. Petralba follows her for her diabetes and told Plaintiff that if she loses weight, everything will go away. (AR 166). Plaintiff stated that her current weight was 347 pounds and that her highest weight was 420 pounds. (AR 157). She had consulted with a bariatric surgeon, but was told she was not a good candidate because of her diabetes, recurring abscesses, and high blood pressure. (AR 157–158).

Plaintiff gets abscesses around her bottom and inner thigh area, and had two at the time of the hearing. (AR 166–167). They make it difficult to sit, but she can sit for 15–20 minutes if she is shifting around to get the pressure off. (AR 167). Plaintiff stated she can stand and walk for no more than 10 minutes. (AR 169).

Plaintiff has had multiple surgeries on both knees and has been seeing Dr. Medlen for 11–12 years. (AR 168). She has a lot of aching, numbness, and tingling, and was recently diagnosed with sciatica. Dr. Medlen also treats her for arthritis and carpal tunnel, and has told her the arthritis is spreading. (AR 169). She had carpal tunnel release on her

right wrist, but was still having tingling, numbness, and stiffness. (AR 170). Plaintiff stated she couldn't use a keyboard because she can't even write because holding a pencil causes spasms and she gets tingling, numbness, and shocking to her elbow.

E.    Vocational Testimony

At the hearing before the ALJ, John Komar testified as a vocational expert. He classified Plaintiff's past work as follows: swap meet cashier, light, performed at medium; swap meet fast food worker, light; companion, light, performed at sedentary; child monitor, medium; and house worker, medium, performed at light. (AR 181).

For the first hypothetical, the ALJ asked Komar to assume an individual with Plaintiff's education who could work at the sedentary level with the following restrictions: occasionally climb ramps and stairs, balance, stoop, crouch, and crawl; never climb ladders, ropes, or scaffolds, or kneel; frequently handle, finger, and feel with the right upper extremity; and avoid concentrated exposure to environmental and workplace hazards. (AR 183). Komar testified that such an individual could do Plaintiff's past work as a companion as actually performed but not as generally performed. Komar further testified that the individual could do other jobs including food and beverage order clerk, document preparer, and addresser.

For the second hypothetical, the ALJ added a requirement that the individual be able to frequently alternate positions between sitting and standing to alleviate discomfort. (AR 184). Komar testified that such an individual could still do the three identified jobs with accommodation, such as having a Varidesk.

Returning to the first hypothetical, if handling, fingering, and feeling were limited to occasional for the right upper extremity, Komar testified that the individual would not be able to do any of the identified jobs because they required manipulative functions bilaterally, and that there would be no other jobs that the individual could perform. (AR 185).

On questioning by Plaintiff's attorney, Komar testified that if the individual was limited to sitting in a clerical position only occasionally, it would eliminate the three jobs.

(AR 186). If an individual missed two days of work 2–3 times a month due to elevated blood sugars, that would eliminate all work.

F.   ALJ's Findings

The ALJ found that Plaintiff had the severe impairments of degenerative joint disease of the bilateral knees with a history of surgical repair, carpal tunnel syndrome, diabetes mellitus, and obesity. (AR 20). The ALJ found that Plaintiff's asthma, even when exacerbated, was described as mild and therefore nonsevere. The ALJ further found that Plaintiff had a diagnosis of hypertension that had a history of causing headaches, and that Plaintiff's hypertension was described as benign and controlled with medication and therefore nonsevere. The ALJ also found that Plaintiff's headaches were nonsevere because they were generally resolved with medication, Plaintiff was advised not to continue to present to the ER for narcotics, headaches were a consequence of poorly controlled blood sugar, and CT scans of the brain and head were normal. (AR 20–21). Finally, the ALJ considered the paragraph B criteria for evaluating mental disorders and found that Plaintiff had no more than mild limitations in understanding, remembering, and applying information; in social interaction with others; in ability to concentrate, persist, or maintain pace; and in ability to adapt and manage oneself. (AR 21–22). The ALJ therefore found that Plaintiff's mental impairment was nonsevere. (AR 30).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence of record for the reasons explained in the decision. (AR 26). The ALJ specifically noted the following: Plaintiff alleged that she had a prescription for a walker, but was this was inconsistent with repeated reports of normal ambulation (AR 23–24); Plaintiff alleged symptoms in both upper extremities, but a nerve conduction study showed only mild carpal tunnel of the right wrist (AR 24, 26); Plaintiff had a history of abscesses on the buttocks and legs, but ability to ambulate was not significantly impaired (AR 24); Plaintiff had full, non-painful range of motion in her right

wrist with normal sensation one month after carpal tunnel release surgery, which was inconsistent with her testimony that she could not even pick up a pencil (AR 26); there were inconsistencies in Plaintiff's testimony and the medical records as to whether Plaintiff was right or left-handed (AR 26); Plaintiff was not entirely compliant with her diabetes treatment (AR 26); and Plaintiff testified that her doctors were reticent to perform weight loss surgery because of her diabetes, but this was inconsistent with a referral for bariatric surgery (AR 26). Thus, the ALJ found that support for Plaintiff's assertions was weakened by the extent that her alleged symptoms were inconsistent with the record. (AR 28).

The ALJ gave some weight to Dr. Medlen's treating physician opinion that Plaintiff had essentially no function in any area of physical work performance because: 1) it was on an unexplained checkbox form; 2) it was inconsistent with his notes of Plaintiff's improvement after carpal tunnel release surgery; 3) it was inconsistent with Plaintiff working in 2015 and 2016; 4) it was inconsistent with Dr. Petralba's opinion; and 5) it was inconsistent with the state agency physician opinions. (AR 26–27).

The ALJ first stated that she gave some weight to Dr. Petralba's treating physician opinion because the restrictions were reasonable in light of the longitudinal medical record. (AR 27). However, the ALJ noted that the very limited walking duration was not consistent with the state agency physician opinions or with Dr. Petralba's opinion that Plaintiff could stand for 8 hours. The ALJ concluded that although Dr. Petralba's opinion was closer to the opinions of the state agency physicians than Dr. Medlen's opinion, the opinion was still not entirely consistent; therefore, the ALJ gave the opinion "significant weight . . . but the internal inconsistency without an explanation rendered it less persuasive."

The ALJ gave significant weight to the state agency physician opinions that Plaintiff could perform light work with some limitations, but found that the standing and walking limitations mitigated in favor of a sedentary RFC, as suggested by Dr. Petralba. (AR 27).

The ALJ found that Plaintiff had the RFC to perform sedentary work with the following limitations: never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; occasionally balance, stoop, crouch, or crawl; never kneel; frequently handle,

finger, or feel with the right upper extremity; and avoid extreme temperatures and work hazards. (AR 24). The ALJ noted that she had considered Plaintiff's obesity in context of the overall record and found that it supported a restriction to no more than sedentary work with additional limitations on climbing, manipulative tasks, and postural task performance; that the RFC also accounted for Plaintiff's history of knee problems; and that the evidence of Plaintiff's carpal tunnel syndrome supported a limitation to frequent manipulative tasks with the right upper extremity. (AR 23, 25, 26).

The ALJ found that Plaintiff could perform her past relevant work as a companion as actually performed. (AR 28–29). The ALJ further found that Plaintiff could perform other jobs existing in significant numbers in the national economy such as food and beverage order clerk, document preparer, and addresser. (AR 29–30). The ALJ therefore concluded Plaintiff was not disabled. (AR 31).

## III.   Standard of Review

The Commissioner employs a five-step sequential process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Heckler v. Campbell*, 461 U.S. 458, 460–462 (1983). To establish disability the claimant bears the burden of showing she (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) the claimant's RFC precludes her from performing her past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). As set forth in

42 U.S.C. § 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Valentine*, 574 F.3d at 690 (internal quotations and citations omitted), and is "more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998). "Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland*, 257 F.3d at 1035 (internal quotations and citations omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

Additionally, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The claimant bears the burden to prove any error is harmful. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011) (citing *Shinseki v. Sanders*, 556 U.S. 396 (2009)). An error is harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *see also Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). "[I]n each case [the court] look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. In other words, "an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate

1   conclusion." *Id.* (internal quotations and citations omitted). Finally, "[a] claimant is not

2   entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how

3   egregious the ALJ's errors may be." *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135,

4   1138 (9th Cir. 2011).

5   **IV.   Discussion**

6          Plaintiff argues that the ALJ committed harmful error by failing to provide specific

7   and legitimate reasons to discount the opinions of Plaintiff's treating surgeon, Dr. Medlen,

8   and her primary care physician, Dr. Petralba. Plaintiff also argues that the ALJ failed to

9   provide clear and convincing reasons to discount her subjective symptom testimony.

10  Finally, Plaintiff argues that substantial evidence does not support the ALJ's finding that

11  she could perform her past work as a companion, and further that the three alternate jobs

12  identified by the VE would all be eliminated based on Dr. Petralba's limitations to

13  occasional fingering, handling, and reaching, and sitting in a clerical position, and

14  Plaintiff's testimony that she would miss at least two days of work 2–3 times a month.

15  Plaintiff contends that these errors require remand for an award of benefits because if Dr.

16  Medlen's opinion was credited as true, Plaintiff would clearly be found disabled, and that,

17  based on testimony by the VE, if Dr. Petralba's opinion was credited as true, Plaintiff would

18  also be found disabled. Plaintiff also contends that crediting her subjective testimony as

19  true would result in a finding of disability.

20         The Commissioner argues that substantial evidence supports the ALJ's finding that

21  Plaintiff was not disabled between 2014 and the ALJ's decision in 2018 because although

22  Plaintiff alleged that she could not work, she did in fact work from 2015–2016, and Dr.

23  Petralba opined that Plaintiff could perform full-time sedentary work. The Commissioner

24  further argues that the ALJ properly assigned less weight to Dr. Medlen's unexplained and

25  extreme assessment, and to the inconsistent and unexplained portions of Dr. Petralba's

26  opinion. The Commissioner also contends that the ALJ provided specific reasons supported

27  by substantial evidence to discount Plaintiff's testimony because Plaintiff's allegations

28  conflicted with the objective imaging and examination findings, her good response to

1    treatment and noncompliance with diabetes treatment, and with medical source opinions

2    on her functioning. Finally, the Commissioner states that if the ALJ did err in finding that

3    Plaintiff could do her past work at Step Four, any error was harmless because the ALJ also

4    made an alternate finding at Step Five that Plaintiff could perform other work. The

5    Commissioner contends that the ALJ's decision should be affirmed, but states that if the

6    Court finds error, the proper remedy is remand for further administrative proceedings

7    because there are conflicts between the medical opinions, the record evidences serious

8    doubt of disability, and further proceedings would be necessary to determine whether better

9    compliance with diabetes treatment would restore Plaintiff's ability to function.

10          The Court has considered the parties' arguments and thoroughly reviewed the record

11   in this matter. For the reasons explained below, the Court finds that the ALJ erred by failing

12   to provide specific and legitimate reasons to discount Dr. Petralba's opinion. This error

13   likely impacted the ALJ's RFC assessment and the hypotheticals posed to the VE, and thus

14   the ultimate nondisability finding. Consequently, the error was not harmless. Because

15   questions remain regarding whether in fact Plaintiff was disabled within the meaning of

16   the SSA during the relevant time period, and because Plaintiff's subjective symptom

17   testimony is best reassessed in light of the record as a whole, the Court finds that remand

18   for further administrative proceedings is appropriate.[7]

19          In weighing medical source opinions in Social Security cases, the Ninth Circuit

20   distinguishes among three types of physicians: (1) treating physicians, who actually treat

21   the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3)

22   non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*,

23   81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the

24   opinion of a treating source than to the opinion of doctors who do not treat the claimant."

25   *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 830).

26   "Courts afford the medical opinions of treating physicians superior weight because these

27   physicians are in a better position to know plaintiffs as individuals, and because the

28   ───────────────

[7] Because the Court will remand this matter for further administrative proceedings on an
open record, the Court declines to address the other issues raised by Plaintiff in her appeal.

continuity of their treatment improves their ability to understand and assess an individual's medical concerns." *Potter v. Colvin*, 2015 WL 1966715, at *13 (N.D. Cal. Apr. 29, 2015). "While the opinion of a treating physician is thus entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Garrison*, 759 F.3d at 1012.

Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830. "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be entitled to the greatest weight . . . even if it does not meet the test for controlling weight." *Garrison*, 759 F.3d at 1012 (internal quotations and citations omitted). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's ADL. *Tommassetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* However, "when evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Finally, if the ALJ determines that the plaintiff's subjective complaints are not credible, this is a sufficient reason for discounting a physician's opinion that is based on those subjective complaints. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

Here, the ALJ first noted generally that an opinion on "a checkbox form lacks

analysis and citations to the evidence and is less persuasive than a written analysis of a claimant's function." (AR 27). The ALJ did not state that she was rejecting the limitations Dr. Petralba assessed on this basis, and the Court finds no error on this point. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [the Commissioner] will give that medical opinion[, and t]he better an explanation a source provides for a medical opinion, the more weight [the Commissioner] will give that medical opinion."); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("An ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings"); *Tommasetti*, 533 F.3d at 1041 (doctor's records did not provide support for limitations assessed on sitting and standing and need for breaks; incongruity was specific and legitimate reason to reject opinion); *contra Garrison*, 759 F.3d at 1013, n.17 (ALJ erred in rejecting a check-box form where the doctor's opinion was "based on significant experience with Garrison and supported by numerous records, and [was] therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit").

The ALJ then stated that she gave "some weight" to Dr. Petralba's opinion because the restrictions were reasonable in light of the longitudinal medical record. (AR 27). However, the ALJ also stated that the very limited walking duration Dr. Petralba assessed (30 minutes at one time and no more than 45 total minutes) was not consistent with the state agency physician opinions or with Dr. Petralba's opinion that Plaintiff could stand for 8 hours. The ALJ concluded that although Dr. Petralba's opinion was closer to the opinions of the state agency physicians than the opinion of Dr. Medlen, Dr. Petralba's opinion was still not entirely consistent; therefore, the ALJ gave the opinion "significant weight . . . but the internal inconsistency without an explanation rendered it less persuasive." The Court finds that this was not a legally sufficient reason to discount the entirety of Dr. Petralba's opinion.

As an initial matter, the ALJ stated that she gave "some weight" and "significant

weight" to Dr. Petralba's opinion. Thus, it is unclear from the ALJ's decision whether she assigned Dr. Petralba's opinion "some weight," "significant weight," or something else.

Second, while the ALJ found that Dr. Petralba's opinion that Plaintiff was limited to 45 total minutes of walking was inconsistent with Dr. Petralba's opinion that Plaintiff could stand for 8 total hours, standing and walking are two distinct functions and assessing different limitations on each is not necessarily inconsistent. However, to the extent that the ALJ erred in finding that this was an inconsistency, any error is harmless because the ALJ limited Plaintiff to sedentary work, which by definition is work that involves sitting and only occasional walking and standing. *See* 20 C.F.R. § 404.1567.

More importantly though, this alleged discrepancy between standing and walking is not a legally sufficient reason to reject the other limitations assessed by Dr. Petralba. The ALJ failed to cite to any other specific reason to assign the opinion reduced weight, nor did the ALJ cite to any specific record that contradicted Dr. Petralba's opinion (other than the state agency physician assessments, which were based on only a partial review of the record and not their firsthand observations). The only reason given by the ALJ was the internal inconsistency between Dr. Petralba's standing and walking limitations, which could not possibly logically apply to the other limitations that Dr. Petralba assessed, including the need to change positions frequently, a limitation to "occasional" sitting in a clerical position, and a limitation to only "occasional" use of the bilateral upper extremities for manipulative tasks. *See Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (ALJ's mere references to minor inconsistencies in the treating physician's opinion was not a sufficient statement of reasons for rejecting the physician's opinion). The Court cannot meaningfully review the ALJ's decision when the ALJ fails to set forth her reasoning. While the Commissioner is not required to "discuss *all* evidence" the Commissioner is required to "make fairly detailed findings in support of administrative decisions to permit courts to review those decisions intelligently" and "must explain why significant probative evidence has been rejected." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (emphasis in original) (internal quotations and citation omitted); *Garrison*,

759 F.3d at 1012–1013 ("When an ALJ does not explicitly reject a medical opinion or set forth specific legitimate reasons for crediting one medical opinion over another, he errs. In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").

The Court notes that while the ALJ failed to mention Dr. Petralba's opinion that Plaintiff needed to change positions frequently, the VE testified that if Plaintiff needed to alternate between sitting and standing, Plaintiff would still be able to do the identified jobs with an accommodation such as a Varidesk. (AR 184). Thus, the ALJ's error in not specifically addressing this portion of Dr. Petralba's opinion was harmless. Further, although the ALJ did not explain why she rejected Dr. Petralba's opinion that Plaintiff was limited to occasional use of her hands and arms for power gripping, pushing, and pulling, pinching with the thumb and index finger, fine movements such as typing and small assembly, and feeling/touching where sensation is required (AR 1133), the ALJ found that the evidence of record supported a limitation to frequent use of the right upper extremity for manipulative tasks (AR 26). The ALJ specifically noted the following: there were discrepancies in Plaintiff's reports as to whether she was right or left-handed; a nerve conduction study showed mild right carpal tunnel syndrome but was otherwise normal; despite the short history and mild diagnostic findings, Plaintiff's doctor described her carpal tunnel condition as "severe" with a "long-standing history"; and following right carpal tunnel release surgery, Plaintiff had full, non-painful range of motion with normal sensation, which was inconsistent with Plaintiff's testimony that she could not even pick up a pencil. (AR 26). Thus, the Court finds that although the ALJ did not directly address Dr. Petralba's limitation to occasional use of the bilateral upper extremities for manipulative tasks, any error was harmless because the ALJ provided specific reasons supported by the record to find that Plaintiff had the RFC to frequently handle, finger, or feel with the right upper extremity, and had no manipulative limitations for the left upper

extremity.

However, the Court finds that the ALJ's failure to specifically address Dr. Petralba's opinion that Plaintiff could only occasionally work seated in a clerical position is harmful error requiring remand. At the hearing before the ALJ, the VE testified that, based on the hypotheticals presented by the ALJ, Plaintiff could perform her past work as a companion as actually performed, and further that Plaintiff could also perform other jobs such as food and beverage order clerk, document preparer, and addresser. (AR 183). On questioning by Plaintiff's attorney, the VE testified that if Plaintiff were only capable of sitting in a clerical position occasionally, it would eliminate the three alternate jobs that the VE identified. (AR 186). However, there was no testimony as to whether Plaintiff would still be able to do the companion job, or any other jobs existing in significant numbers in the national economy. Thus, the ALJ's failure to specifically address Dr. Petralba's opinion that Plaintiff could only occasionally sit in a clerical position—and provide specific and legitimate reasons to reject that opinion—is not harmless because it affected the ALJ's RFC assessment and the hypotheticals posed to the VE, and thus the ultimate nondisability finding. Accordingly, the Court finds that this matter should be remanded for further administrative proceedings to reassess Dr. Petralba's opinion and continue the five-step sequential evaluation process.

## V.    Remedy

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). Absent legal error or a lack of substantial evidence supporting the ALJ's findings, this Court is required to affirm the ALJ's decision. After considering the record as a whole, this Court simply determines whether there is substantial evidence for a reasonable trier of fact to accept as adequate to support the ALJ's decision. *Valentine*, 574 F.3d at 690.

"'[T]he decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court.'" *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) (quoting *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985)). "Remand for further administrative proceedings is appropriate if enhancement of the record would

be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). Conversely, remand for an award of benefits is appropriate where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). "Even if those requirements are met, though, we retain 'flexibility' in determining the appropriate remedy." *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting *Garrison*, 759 F.3d at 1021).

"[T]he required analysis centers on what the record evidence shows about the existence or non-existence of a disability." *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). "Administrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence may well prove enlightening in light of the passage of time." *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal quotations and citations omitted). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id.* "In evaluating [whether further administrative proceedings would be useful, the Court considers] whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *Id.* at 1103–04. "This requirement will not be satisfied if 'the record raises crucial questions as to the extent of [a claimant's] impairment given inconsistencies between his testimony and the medical evidence in the record,' because '[t]hese are exactly the sort of issues that should be remanded to the agency for further proceedings.'" *Brown-Hunter*, 806 F.3d at 495 (quoting *Treichler*, 775 F.3d at 1105).

Here, the Court finds that "[r]emand for further administrative proceedings is appropriate [because] enhancement of the record would be useful." *Benecke*, 379 F.3d at

593. The ALJ erred by failing to provide specific and legitimate reasons to discount Dr. Petralba's opinion, and specifically failed to address Dr. Petralba's opinion that Plaintiff was limited to occasionally sitting in a clerical position. As explained above, the ALJ's comment regarding the alleged discrepancy between Dr. Petralba's standing and walking limitations cannot be a legally sufficient reason to reject the clerical position limitation. Because of this error, the ALJ did not include any limitations on sitting in a clerical position in the RFC assessment or the hypotheticals posed to the VE, and the VE did not address whether such a limitation would preclude Plaintiff's past work as a companion, or all other work. It is thus unclear whether Plaintiff would be able to perform any sedentary work with a limitation to occasionally sitting in a clerical position. Consequently, issues remain regarding Plaintiff's RFC and her ability to perform work existing in significant numbers in the national economy during the relevant time period. *See Hill v. Astrue*, 698 F.3d 1153, 1162–63 (9th Cir. 2012).[8]

This Court offers no opinion as to whether Plaintiff is disabled within the meaning of the Act. "The touchstone for an award of benefits is the existence of a disability, not the agency's legal error." *Brown-Hunter*, 806 F.3d at 495. Plaintiff's RFC and subjective symptom testimony are best reassessed in consideration of the record as a whole, and on remand the ALJ shall give further consideration to all of the previously submitted medical testimony and lay testimony and continue the sequential evaluation process to determine whether Plaintiff is in fact disabled. "Viewing the record as a whole [this Court] conclude[s] that Claimant may be disabled. But, because the record also contains cause for serious doubt, [the Court] remand[s] . . . to the ALJ for further proceedings on an open record." *Burrell*, 775 F.3d at 1141–1142 (noting that evidence in the record not addressed by the ALJ cast doubt on the claimant's credibility). The Court expresses no view as to the appropriate result on remand.

. . .

_____

[8] The Court further notes that, if on remand the ALJ does find Plaintiff disabled, there is also an outstanding issue as to what the proper date for payment of benefits is. The ALJ noted this in her decision but did not resolve the issue because she found Plaintiff not disabled.

## VI.     Conclusion

In light of the foregoing, **IT IS HEREBY ORDERED** that the Commissioner's decision is remanded back to an ALJ on an open record with instructions to issue a new decision regarding Plaintiff's eligibility for disability insurance benefits. The Clerk of Court shall enter judgment accordingly and close its file on this matter.

Dated this 20th day of July, 2020.

Eric J. Markovich
United States Magistrate Judge